Good morning, Your Honors. Kevin Carter for the Plaintiff and Appellant. This case arises out of an underlying action that was filed by Marissa Perez in November of 2003 against her employer at that time, Mr. Gary Peterson and his company, For Women Only, which is a company that specializes in providing gym services for women only. Ms. Perez was an employee there who was terminated, and after suing her employer, he was unable to disappear. He refused to defend himself, and he assigned his rights against his insurance company, which leads us to this case here today. There are a number of issues that were raised by the court below, and I'd like to focus on two of those issues, one being the issue of the conspicuousness of the placement of the exclusion that's at issue in this case, as well as a breach of the duty to investigate. As Your Honors are aware from a review of the briefs, the insurance company relied on an exclusion for employment-related practices. Now, Ms. Perez sued Mr. Peterson based on a number of things, including some defamatory statements that were made against her, specifically that she was an unfit mother and presented an unjustifiable risk to her fetus, and that was one of the grounds upon which he fired her. Now, in her complaint against Mr. Peterson, she alleged that these statements were made not only to prospective employers, but also to third parties. Now, that isn't in the complaint in this case, though, right? The complaint here says, more generally, I'm looking at page five of the complaint, that she advised third parties, including prospective employers, of various unsavory things. And so we have to understand that to mean that not all the third parties were prospective employers, right? That is correct, Your Honor. But that's all that we have in front of us, isn't it? Well, that's true, Your Honor, but as Your Honors are aware, one of the things that that raises is the duty of the insurance company to investigate further to make sure that the complaint, by no conceivable means, could be amended to thereby provide for coverage. No, I don't disagree with the principle you're stating. I guess I just want to be sure that we're not importing things that were neither in the complaint nor otherwise actually known at the time of the tender. You're correct, Your Honor, and I'll address those points in greater detail in a moment. One of the things relied upon by the insurance company and largely by the district court was that a mere perusal of this policy would clearly alert the insured that the claims here were not covered because of the exclusion that is at issue here. With all due respect to the district court, I believe that it oversimplified what was being faced by the insured here. As the California Supreme Court stated in the Haynes case, it's common knowledge that as a practical matter, insureds rarely read their policies from cover to cover. I would dare to guess that the attorneys here today do not read their insurance policies from cover to cover. And yet the district court said by mere perusal of the... The exclusion is an exclusion for employment-related practices. Did it contradict something that was in the general policy? Yes, Your Honor, the actual general policy provided for coverage for statements that are made, you know, slanderous or libelous statements. But it didn't say specifically that it covered employment-related claims. It was marketed to employers as employer liability. How do we know that? Bear with me for a moment, Your Honor. I was talking about the policy. The policy provides that personal and advertising injury means the following. Injury including consequential bodily injury arising out of one or more of the following offenses. Oral or written publication of material that slanders or libels a person or disparages a person's services. I understand that, but you said that it was marketed as an employer liability policy. Well, the insurance policy is being marketed directly to employers such as Mr. Peterson and his company for women only. And the policy itself specifically states that this is covered. And in the main policy that is covered, and yet in this endorsement that is not properly titled, that very coverage that was given to him is taken away. And if you look at the placement of the endorsement, again, with due respect to the district court, it does not put the insured on notice of what is being covered here. One thing that is important to keep in mind is that it's on the insurance company to provide an organizational scheme that puts the insured on notice of the potential excluded claims here. And let's look at where they place this. Counsel, I think you can assume that all of us have actually read this, and I want to move on to a question that assumes the validity of that exclusion, because it will help me in my thinking. Assuming that the exclusion is valid and that what I said earlier about the amended complaint here, that it goes beyond talking to other prospective employers, would suggest that you had a valid breach of contract claim. But it doesn't necessarily suggest what would happen on the other claims. And just assuming for the sake of this question that that is a potentially covered claim, defamation to potentially people who are not prospective employers, what would happen to the other claims? Some of them seem like they might be related, and some of them seem like they probably are not related, the tort claims, the various tort claims. Well, Your Honor, at the very least, the insurance company owed the insured a duty to investigate to find out more about those allegations of DUV, including but not limited to statements of third parties. But ultimately, isn't your position that they owed a duty to defend if there's any? Is this basically a duty to defend case? It's a duty to investigate, a duty to defend an unclear exclusion. No, I understand that. But with regard to leaving aside the unclear exclusion again, you're not claiming a duty to indemnify but a duty to defend. Is that right? That's correct, Your Honor. And the investigators is simply an addendum to that. Had they investigated, they would have known they had a duty to defend. And the failure to investigate actually would be grounds for a bad faith claim if you arbitrarily deny a claim that calls for further investigation without investigating it. But what I wanted to make clear was this. So isn't the answer to Judge Graber's question, or is it that because you're looking at a duty to defend, if anything in the complaint raises a potential claim, then there's a duty to defend the whole thing? Is that not what California law is? Well, yeah, there is a duty to it. In fact, if there is something that's potentially covered, the insurance company should have defended with a reservation of right. That would have been a simple solution to their problem if that was their concern. Well, I guess I have more of a question than that, and I didn't really make it clear. It seems to me that if that's the way we were to reason in the case, I don't see that that necessarily revives, for example, the intentional infliction of emotional distress claim and the unfair business practices claim as distinct from those that are related specifically to the contract. I'm not really making my question very clear.  But with respect to the unfair business practices, that claim is predicated on the unfair and deceptive placing of the exclusion. Okay, but if we disagree with that, then the mere fact that they should have defended the claim doesn't make it an unfair business practice as opposed to a breach of contract. Well, if in fact the motivation for the organizational structure was, in fact, to dupe the insureds into purchasing this policy, knowing that they're not going to find this exclusion buried within this policy itself. Okay, but that all rises and falls on the exclusion. If we were to agree with the district court that the exclusion is conspicuous and that it's enforceable, but nevertheless that they should have defended, then isn't there only a breach of contract claim left? Well, again, Your Honor, I do believe that if, in fact, their decision was based on an arbitrary and lack of investigation, that that would also give grounds for a tort claim as well. Which tort claim? 17200, I'm sorry. That's a statutory claim. Yeah, I'm sorry. That's not a tort claim. That's why I'm asking you the question. I'm trying to pinpoint exactly which causes of action would still exist in the scenario that I've described that I know you don't agree with, but I'm trying to just think it through. If the exclusion is conspicuous and is enforceable, but they should have defended, there's a breach of contract claim, there's a statutory claim. Is there anything else? Well, if the breach of the duty to defend was just based on an actual honest interpretation of the policy, that's one thing. But if, in fact, the insurance company knew that these claims were covered and yet disregarded the rights of the insured. Based on the allegations in your complaint, would there be any other claims that would survive under the scenario I've described, besides the statutory claim and the breach of contract claim? I don't believe so, Your Honor. Okay. Thank you. And I see my time is running out. If I could reserve some time for rebuttal. Certainly. Good morning, Your Honor. My name is Stephen Soskin on behalf of Specialty National. I'm going to divert away from any prepared remarks. I wanted to address the issue the Court was, how I was interpreting what the Court was talking about with respect to statements made to third parties that were not prospective employers. The critical thing about that fact is it was never provided to Specialty National. The first amended complaint and the underlying action which contained that allegation was never provided to my client so they could undertake an analysis of whether that would have provided a potential for coverage or not. And the insured, when the initial denial letter was issued, we asked the insured if there was anything else that Can this case go off on a motion to dismiss or on summary judgment? Motion to dismiss, Your Honor. Well, see, that's my problem because the first amended complaint in this case, in this case, Perez in her suit claimed that the spa and Peterson told third parties, including prospective employers, implicitly not exclusively prospective employers, of various bad things about her. And it alleges that you knew. Now, that may not be true. But on a motion to dismiss, don't we have to take that? Your Honor, I don't believe it alleges that we knew that. In fact, I believe the district court was giving leave to amend. How could you possibly make any decision about whether to defend a case without seeing the complaint? You asked to defend a complaint? We were requested to defend the initial complaint and the underlying action. In the Perez suit? Yes. There was an initial complaint. It was tendered to us. It did not contain the allegations about that you've interpreted to mean potentially non-prospective employers. And in the complaint in this case, it never says that information was tendered to Specialty National. So what happens is the Perez complaint comes in. The women only tenders it to Specialty National. Specialty National looks at it and says this isn't covered. The employment-related practices exclusion applies. In the context of an agreement between counsel and the underlying Perez case, a first amended complaint apparently was filed, which contained the personal animus allegations and the third-party allegation. And even though after we denied cover, we said if anything comes up and you think that we should change our position, tell us, they never tendered the first amended complaint in Perez to Specialty National. And the district court- Well, they allege on page 7 and 8 of the first amended complaint that they gave a written notice and forwarded a copy of the Perez complaint and asked for indemnification. And I guess what I'm concerned about- That's the point right there, though. But let me just finish my question. It seems that many of the arguments that you've made in the brief and that you're making again today seem like ripe subjects for a summary judgment motion. But I think we're a step before that. Well, the key point of what you just said on the allegation, and this is what the district court recognized this, the Perez complaint is the initial complaint. It's not the Perez first amended complaint. But we can't tell that just from the allegations because if you look at paragraph 12, it says that she alleged in the complaint and the first amended complaint these various things. And it doesn't attach them, at least insofar as I'm reading the record, we don't have the actual Perez complaint and first amended complaint in front of us. All we have is the allegation. And I can't tell from reading this that it wasn't in the original complaint. That's my problem with the way- with it as a motion to dismiss as distinct from whatever you can demonstrate on summary judgment. I'm not sure I'm making myself very clear. But if you look at page 5 of the first amended complaint, at the top of paragraph 12, which lists all these things, it says alleged in her complaint and first amended complaint. And then it lists all this without distinguishing whether they were in one or the other or both. So with the conjunction and, I would have to assume, I think, for purposes of a motion to dismiss that it was all in the original Perez complaint. I'm not going to belabor that point because I see what you're talking about there. However- Picky, isn't it? Another picky point is that you never made this point in your brief. You did make the point that you said sort of generally that they were relying on extrinsic evidence, but you never said that they proffered the first but not the second complaint. I don't have my brief memorized. I know it was a point below your own. I just looked because it was a surprising argument to me and I thought I missed something and it's not there. I apologize for that. Let me ask if we can revert for a minute to the other issue, the conspicuousness issue. It does strike me as at least misleading and odd to head, when it would have been very easy to do otherwise, to have a heading that says liability enhancement endorsement, fitness and wellness program, and then stick into it a whole bunch of exclusions of the whole policy. Well- Wouldn't somebody looking at that be thinking that you were enhancing liability, not limiting it? First of all, wrongful termination is never covered under any policy. That's black letter California law because it's intentional conduct. Now, if you look at the policy- You must have thought you needed to exclude it or you wouldn't have put it in. Pardon me?  This is employment-related practices and it talks to a number of things. If you look at the policy, which I believe is at 193- Oh, I'm wrong. I went to the wrong place. There are two parts to this policy that address the fitness and wellness program. One is the enhancement endorsement we're talking about here, and another is the employment liability coverage. So there's a separate endorsement that says this is the coverage we're going to give you for employment liability. Where is that? What page are you on? The whole thing starts on page 40. So where- Well, I'm looking at what I have marked as it's like page 120. The policy, I think, starts at page 125 or page 22, depending on which number you're looking at. I have, starting on page 40, I don't know what I'm looking at. They're a little hand- You're looking at the fitness and wellness and mandatory endorsement. Correct? Yes, there's that. Okay, that's one provision. Right. That applies. Does that have anything in it? That coverage is- And where does that have something about employment issues? And then there's another section. There's employer's liability insurance. Which is at page 56, I believe. The one that says liability enhancement endorsement dash fitness and wellness program. That's at page 40. That's at page 64 of what I've got, but go ahead. 61. I think we've all got different- 64, you're right. All right, go ahead. There are two sections that- But on page 74, there's an employer's liability insurance. Is that what you're referring to? Yes, that's what I'm talking about. Okay. So if you look at these, you say, all right, here's some coverage, the basic coverage for employment liability. And then there's some additional coverage, the enhancement, if you will, that's provided at page 40, I believe. Unjudged gravities. But the exclusion, when all the verbiage is done, the exclusion that you're relying on is under the heading liability enhancement endorsement. Is that not correct? Obviously, that is correct, Your Honor. However, if you- It does both. It takes with one hand and takes back. Well, no, if you look at the other endorsement, it's also excluded under that endorsement. So any reader who's in the fitness and wellness business says, all right, here are the two provisions that apply to me. And in both of them, it excludes this type of- Right, but just because it says enhancement, if you look at the whole thing as a whole, there are some extras that are in there as well as some things that are excluded. That's right. So it isn't just totally exclusions. It's here's some extra stuff, but it isn't everything. There's enhancements for auto. There's enhancements for professional liability. It's in addition to what's provided in the other section. That's right. And as the district court found, if you just flip through it, you see a big entitled- There hasn't been a single case that I'm aware of where big, bold letters, exclusion, all capitals, where that's been found to be inconspicuous. I was not aware that you were also relying on the exclusion in the employer's liability insurance. It's some in substance the same thing. All I'm saying is- On page 75, if you're looking. Well, I mean, that one's more plausible to me, actually, because there the heading and what's in it have something to do with each other. All I'm saying is if I was in that business and I saw two endorsements that applied to my business specifically because it's not marketed as employer's liability insurance. This is a special program for health clubs. So a health club operator says, oh, there's the two endorsements that are going to apply for me. There are three, actually. We get the point, though, whether there's two or three or one. And both of them have the exclusion in them. That's conspicuous. I mean, it comes under headings exclusions and employment-related practices is bolded and capitalized. I couldn't find a single case where that occurred. And I did find in preparing for this in the federal appendix a September of 07 case where this court said capital's exclusion makes it obvious. Let me ask you a similar question that I asked Mr. Carter. I think I got your name right. Sorry. Assuming for the sake of this question that we were to conclude that the exclusion or exclusions are conspicuous and enforceable, but that this complaint on a motion to dismiss raises a duty to defend and, therefore, an issue as to breach of contract. Opposing counsel says, well, the statutory claim would revive with the breach of contract claim, but nothing else would. Do you agree with that, that if there's a live breach of contract claim, that there is a coextensive statutory claim, at least for the purposes of a motion to dismiss? I believe in considering Prop 64 as well that if the plaintiff could show that he had been damaged by breach of contract, that he would have standing to assert the B&P Code. Okay. And since I believe the district court's decision in our argument, you know, when I read these briefs, I'm sure as you did, seeing the words conspicuous and bold and capital over and over and over again in both places, I would have to say it probably would revive. It probably wouldn't revive? No, I think it would. I mean, I think the arguments are the same. I think the arguments are the same, basically, which says if he got what he paid for, no coverage for wrongful termination of employment practices act and no duty to defend, he doesn't have a 17200. But if somehow the case was covered below, then, you know, I think we might be able to defeat that subsequently on a motion to dismiss from a different angle. But not on this record? But not on this one. Okay. No. Thank you. I know I have one more point. It seems to me that to the extent the original complaint contained the personal animus allegation, that they would not have brought this matter into the scope of coverage under the personal injury endorsement, because that requires the statement to be made in the context of business. And so even if everything else that I'm hearing the court say is correct, it's not even within the scope of the personal injury coverage under which they're claiming. So that would be, to avoid having to go through the summary judgment process later, that would be the hook I would suggest would be applicable. Thank you. Thank you, counsel. Mr. Carter, you have a little time remaining. Several points, Your Honors. First of all, I believe counsel's raised some arguments I had not heard before in terms of relying on other provisions besides the one provision that I thought was at issue here. Secondly, I believe that the counsel is ignoring the claims for defamation and simply saying that the claims were not covered because it's an employment-related practice with respect to wrongful termination. What they argued below was that the employment-related practices exclusion applied because these statements were purportedly made to prospective third parties, and therefore under that provision they were not covered. Any false statements that damage Ms. Perez's reputation are not necessarily precluded by the Employment-Related Practices Act if they are not made to prospective employees. So that in and of itself is – To go to the conspicuousness issue for a moment, why isn't the exclusion as contained in the employer's liability insurance? First of all, Your Honors, the question that has yet to be answered by the insurance company is why was this exclusion placed where it was placed if, in fact, it was innocuous, didn't have a bad intention in placing this where it is? Actually, I mean, it placed – although I had some issues about being placed in the so-called enhancement, I didn't realize that it also appeared in something that's headed Employer's Liability Insurance Fitness and Wellness Program, or it seems to me you would look for both affirmative and limiting provisions, and there is one. Well, if you look at the actual title, as Your Honors noted, it appears that it is, in fact, providing additional coverage. No, I'm talking about the other endorsement, Employer's Liability Insurance. Page 74 and following of the excerpts. Mine appears to be numbered a bit differently than yours. Oh, I'm sorry. I don't know how we all ended up with the same odd numbering up here, but it's not your number. It's towards the end of the insurance policy. It's almost at the end. I think it's the next to the last endorsement. It's right before the 2000 – the Y2K computer-related problems. It's right before that. And my document is either 159 or 56. Okay, I have page 56 here. Wow, I don't know how we got such different numbers. I'm sorry again. What was the question here, honey? It says Employer's Liability Insurance Fitness and Wellness Program, right? So that looks like it's the right category. Yes. And then in the next page it says Exclusions, and it says this insurance does not cover, and it says seven, damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee or any person who outpractices policies, acts, or emissions. So why isn't that both a conspicuous and well-placed exclusion? Well, as Your Honor noted, this is at the very back of this long and complicated – Well, something has to be at the back. Is the last third sort of not valid in insurance policies? Well, I'm not saying that, Your Honor, but in terms of if the burden is on the insurance company to bring these sorts of exclusions to the attention of the insurance and case law recognizes that as a practical matter, policyholders will tend to go through and look at the captions of the policies as well as perhaps declarations pages. And if you look at the schedule of forms and endorsements in this policy, there is nothing here that alerts the reader to the fact that there is an exclusion contained in either one of these provisions, though it does so for other exclusions. This is nuclear energy liability exclusions, punitive damages exclusions, Y2K exclusion problems. But yet nowhere in the schedule of forms and endorsements is there anything warning the reader that, in fact, oh, by the way, the coverage that you thought you were purchasing with respect to coverage for statements made against employees is going to be taken away at the very back of this complicated policy. So, Your Honor, the case law requires that the insurance company structure the policy in such a way that it doesn't require a layperson after the fact to know what they're looking for and find it. I mean, we're sitting here with hindsight, knowing what we're looking for, still having difficulty finding these provisions. We have to place ourselves in the position of a layperson who is not an insurance specialist who is relying to a great deal on their insurer and directing them towards the various provisions that are relevant here. And I would submit that they have not done that in this case. Thank you, counsel. We appreciate very much the arguments of both parties. They've been helpful as if you're page numbering assistance. And the case just argued is submitted.
judges: Hall, Graber, Berzon